## Seibert's Appeal.

| 19          49 |
| 19 SC ¹576 |

| 19          49 |
| 35 SC ³195 |

1. The Court of Common Pleas and the Orphans' Court have concurrent jurisdiction in all cases of testamentary trusts, except in cases where the jurisdiction is saved exclusively to the Orphans' Court by the 15th section of the Act of 14th June, 1836, relating to assignees, for the benefit of creditors and other trustees; and the decree of the Common Pleas may be enforced by execution.

2. A testator, by his will dated in December, 1824, and proved in September, 1830, devised his estate equally among his three daughters. The share of one of them was devised to a person and his heirs in trust for the separate use of said daughter for life, to permit her to take the interest or income yearly and every year as they come due, for her separate use during her natural life. And he further directed, that after the decease of his daughter, her share (the one-third) should be divided among her children, share and share alike, as they arrive at the age of twenty-one years. The daughter died, leaving a husband and eight children, three of whom were minors. *The Orphans' Court* decreed that the executor, who was also trustee, should pay out of the interest of the fund $150 for the past support of the three minor children, and the interest on the fund due to *two of them* to be applied to their future support and education. Afterwards, on the petition of the guardian, *the Court of Common Pleas*, of the same county, decreed that the said executor should pay to the guardian of two of said minor grandchildren "$100 for their past support, and $14.88 interest." The Court of Common Pleas awarded a fi. fa., under which the sums ordered to be paid were paid by the executor. On appeal, it was *held*, that though the legacies to the said grandchildren were *contingent* on their arrival severally at the age of twenty-one years, yet that the Court had power to decree that the *interest* on the amount payable to each on their attaining the age of twenty-one years, be paid to their guardian for their support and education respectively.

3. Whether a legacy by a parent to his children or grandchildren be vested, or contingent on their arrival at lawful age, the legatees during their minority may have an allowance out of the interest for their support and education; and the same doctrine is applicable where the legacy has been given by one who has put himself *in loco parentis*.

APPEAL by Christian Seibert, trustee under the will of Henry Hirsch, deceased, from the decree of the Court of Common Pleas, of *Berks county*, ordering him to pay $114.88 to Jacob S. Livingood, guardian of William Roland and Rebecca Roland.

The said Christian Seibert was appointed trustee of Margaret Roland by the will of her father, Henry Hirsch, dated 10th December, 1824, and proved 25th September, 1830. The will provided that after the sale of his real and personal property, the money arising therefrom should be divided among his three daughters Elizabeth, Justina, and Margaret (intermarried with Samuel Roland), the said Margaret to have the benefit or interest of the same for her separate use. He devised to Christian Seibert the third part of the estate, to hold the same during the life of Margaret, he to allow Margaret to receive the interest yearly of the said third part. After the decease of Margaret, the said third part to be divided among her children, share and share alike, as

[Seibert's Appeal.]

they arrive at the age of 21 years. The said Christian Seibert was appointed sole executor of the will.

Margaret Roland died on 20th May, 1844, leaving a husband and eight children, of whom Emeline, William, and Rebecca were three, and were minors. October 12, 1848, Seibert's account as executor was filed, which was confirmed in January, 1849. The balance against accountant was $2766.17, each of the minors' shares being about $533.23. In August, 1849, the *Orphans' Court*, on petition of the guardian, decreed that the sum of $150 be paid for the past support of *Emeline*, and of the said William and Rebecca, and the *interest* on the fund due to *William and Rebecca* to be applied to their future support and education. In November, 1849, on petition of the guardian, *the Court of Common Pleas* of Berks county awarded a citation to Christian Seibert, and on 23d February, 1850, the said Court decreed that Seibert should pay to Livingood, the guardian of William and Rebecca, the sum of $100 for their past support, and $14.88 interest. The application as to Emeline, who was married, was held under advisement. May 11, 1850, the Common Pleas awarded against Christian Seibert a writ of execution in the nature of a writ of *fi. fa.* to levy the $100 and $14.88 and costs, which was levied, and the amount was then paid.

Christian Seibert appealed from the decree.

Exceptions were filed, viz. :—1. The Court erred in making an order and decree that Christian Seibert should pay to Jacob S. Livingood, guardian of William and Rebecca Roland, the sum of $100, and $14.88 interest, and in awarding a *fi. fa.* for the same. 2. The *fi. fa.* was illegal and erroneous.

By the Act of 16th June, 1836, relating to the jurisdiction and powers of Courts, sec. 13, the Common Pleas has jurisdiction as to the control, removal, and discharge of trustees, and the appointment of trustees and the settlement of their accounts.

See 1 *Harris* 501, Seibert's Appeal, for report of another case arising under this same will.

*Banks*, for appellant.—1. The legacy was contingent. It was not vested at the time the order was made. Therefore the wards of Jacob S. Livingood had no right to the money or any part of it : 1 *Harris* 501, Seibert's Appeal. 2. The Court of Common Pleas could not in this way enforce a decree in the Orphans' Court. If the decree in the Orphans' Court was binding upon the appellant, the payment of the money could only be enforced by bill and subpœna in chancery, or by an action of debt, in the Court of Common Pleas, and not in this summary way.

An action of debt will lie on a decree in equity for the payment of money only : 9 *S. & R.* 261, Evans *v.* Tatem.

3. *The Common Pleas* had no power to make an order for a periodical allowance for the use of the minors. That power belongs only to the Orphans' Court. That power was conferred on the Orphans' Court for the first time by the 13th section of the Act of 29th March, 1832. The Orphans' Court is to make the direction, but that Court cannot compel a third party to pay the money in the summary way pursued in this instance. This appears from the 2d section of the Act of 13th April, 1840, relating to Orphans' Courts. The proceeding under the Act of 16th June, 1836, is a *chancery power*, and the proceeding must be by bill and subpoena : 2 *Wh. Rep.* 330, Ex parte Hussey.

4. The Court had no authority to issue the *fi. fa.* It was not a proceeding *in equity* : 2 *Ser. & R.* 58, Cassel *v.* Duncan ; 8 *Id.* 296, Cassel *v.* Cook.

5. Restitution is asked for.

*Davis*, contrà.—He referred to Act of 16th June, 1836 ; to the 28th and 19th sections of the Act of 14th June, 1836, relating to assignees and other trustees ; to 33d section of same Act, and to the 57th section of the Act of 29th March, 1832, relating to Orphans' Courts. He contended, that though according to Brown's Appeal, 2 *Jones* 333, the *Orphans' Court* may have power over trusts like this, yet as this trust is conferred on Christian Seibert *nominatim, and not as executor*, the Common Pleas have concurrent jurisdiction : 7 *Barr* 459, Wheatly *v.* Badger.

It was immaterial whether the execution issued out of the Common Pleas or Orphans' Court, the material question was whether in such a case a chancellor would exercise his power to decree for *past* or future maintenance. That such an exercise of power was proper, he referred to 4 *John. Ch.* 104 ; 2 *Ashmead* 210 ; 1 *Id.* 344 ; 1 *Mad.* 274 ; 2 *P. Wm.* 23 ; 2 *Id.* 419 ; 3 *Atk.* 308 ; 1 *Bro. C. C.* 268 ; 1 *Vernon* 255 ; 10 *Barr* 15.

He contended, notwithstanding the decision in Seibert's Appeal, 1 *Harris* 501, that the legacy in this case was a *vested* legacy. In that case the minor who died was unmarried. But another of the minors is married and has issue. If she dies before attaining the age of 21, is her issue not to share the bounty of its grandfather ? He referred to 5 *W. & Ser.* 517, Reed *v.* Buckley ; 2 *Ashmead,* 202 ; GIBSON, C. J., in King *v.* King, 1 *W. & Ser.* 207 ; 1 *Jarman on Wills* 726 ; 1 *Roper on Leg.* 392–3 ; 10 *Barr* 237.

But where the testator has placed himself *in loco parentis*, the interest on the legacy is applied for maintenance, whether the legacy *be vested or contingent* : 2 *Ashmead* 207 ; 4 *Rawle* 119 ; 2 *Roper* 199, 204. The legacy in this case is not given *over*, and the father is not of ability to maintain his children : 5 *Ves.* 194 ; 9 *Id.* 470 ; 10 *Id.* 45.

In this case the legacies bear interest, and the allowance of

interest is not forbidden by the will; and the interest or rents belong to them, even *if there was a devise over:* 10 *Barr* 15, Bayard *v.* Atkins.

The opinion of the Court, filed July 20, was delivered by

Lewis, J.—By the will of Henry Hirsch, dated 10th December, 1824, and proved 25th September, 1830, the testator devised his estate equally among his three daughters; the share of his daughter Margaret, intermarried with Samuel Rowland, was devised to Christian Seibert, senior, and his heirs, in trust for the separate use of said Margaret, for life, "to permit her to take the interest, or income, yearly, and every year, as they come due," for her separate use, "during her natural life." And the testator further directs that, "*after the decease* of his daughter Margaret, the one-third (her share) shall be divided among her children, share and share alike, *as* they arrive at the age of twenty-one years; but in case the said Margaret *should not have any lawful issue or children, and living,* then, in that case, the remaining one-third shall descend to her two sisters, Elizabeth and Justina, or their heirs, for ever."

Margaret Rowland died on 20th May, 1844, leaving her husband and eight children surviving, of whom William and Rebecca are in their minority. On the 30th August, 1849, the Orphans' Court of Berks county, on petition, and on hearing the parties, decreed that the executor, who was also the trustee, should pay to Jacob S. Livingood "the sum of $150, for *the past support* of Emeline, William, and Rebecca, and *the interest on the fund due to each, for the future support and education of William and Rebecca.*" On the 23d February, 1850, the Court of Common Pleas of the same county, upon the petition of Jacob S. Livingood, guardian of the said minor children, and citation to the said Christian Seibert, trustee, decreed that the said Christian should "pay to the said Jacob S. Livingood, guardian of the said William and Rebecca, the sum of $100 for their past support, and $14.88, interest." On the 15th May, 1850, the Court awarded a writ of execution, in the nature of a *fi. fa.,* under which the sums ordered by the Common Pleas to be paid were collected. The cause comes into this Court by appeal from the decree of the Common Pleas. The proceedings in the Common Pleas appear to have been adopted for the purpose of enforcing the decree of the Orphans' Court, and the sums decreed to be paid by the Common Pleas are payable out of the interest accrued upon the legacies payable to William and Rebecca when they shall arrive at the age of twenty-one years.

In Wheatly *v.* Badger, 7 *Barr* 459, it was held, that where a will constitutes the executor a trustee, *by name,* the Orphans' Court had no jurisdiction over the trust. But in Brown's Appeal,

2 *Jones*, 333, that decision was overruled, and it was held, that the Orphans' Court and Common Pleas have concurrent jurisdiction in all cases of testamentary trusts, except in cases where the jurisdiction is saved exclusively to the Orphans' Court by the 15th section of the Act of 14th June, 1836. We concur most cordially in the remark of Mr. Justice COULTER, in delivering the opinion of this Court, in Brown's Appeal, that "it is for the interest of society that there should be one tribunal to which parties can resort without being perplexed by such abstruse distinctions." There is nothing in the decree of the Orphans' Court which would move the conscience of a chancellor to set aside the subsequent proceedings in the Common Pleas. On the contrary, the decree of the Orphans' Court, unreversed and unappealed from, should have the effect of settling conclusively, at least between the guardian and his wards, the propriety of appropriating the sums designated in the decree for their maintenance. The Orphans' Court has a general jurisdiction over the persons and estates of minors, and over their guardians, as well as over the estates of decedents, and the accounts of executors and administrators; and its decrees are not to be reversed in collateral proceedings. We see no injury likely to arise to the appellant from the preliminary proceedings in the Orphans' Court; and the proceedings in the Common Pleas to enforce the decree can do him no harm, except in regard to a trifling increase of costs. These, being discretionary in a Court of Equity, and being always imposed upon the party in fault, can furnish no ground for reversing the proceedings. But the appellant has, by this proceeding, received, without objection, the advantage of an examination *de novo* into the main question, whether either Court has power to decree the payment of the interest, or any portion of it, for the maintenance of the legatees, until they arrive at the age of twenty-one years. This advantage would compensate for the increased costs, if the appellant were litigating for his own benefit; but as he is acting as trustee, and, it is presumed, desires only to preserve the fund for the parties entitled, the costs of these proceedings will be allowed him on settlement of his accounts. There is nothing irregular in the decree of the Common Pleas, or in the process issued to enforce it.

The power of the Court to award interest on the legacy, for the maintenance of the legatee, remains to be considered. And here it is material to observe the difference between an *action at law*, claiming the legacy, or the interest on it, as a matter of right, before the time limited for its payment by the testator, and an application, in chancery forms, to the equity powers of the Court, asking only such an allowance as the Court, under all the circumstances, shall think proper to direct, for the support and education of the infant legatee. In disposing of such an application the chancellor has a discretionary authority: there is a reference to,

and a report by, a master on the special circumstances of each case—the order is made or refused, and the amounts limited or enlarged, according to the nature and urgency of such circumstances. But an action at common law is a demand of the sum claimed, as a legal right, and is, in its nature, a disclaimer of the chancery powers of the Court, and a refusal to submit to its discretionary authority, to be regulated by the circumstances of each case. Miles *v.* Wistar, 5 *Binn.* 477, and Hubley *v.* Long, decided at the late sitting in Harrisburg, were cases of the latter character, and afford no indication of what might have been done by the Court had the appeal been made, in each case, to its equity powers.

In Magoffin *v.* Patton *et al.*, 4 *Rawle* 119, Mr. Justice KENNEDY, in delivering the opinion of this Court, stated the general rule to be that where legacies were given payable *at* a certain time, they carry no interest before that time ; for interest is allowed for delay of payment, and consequently, till the day of payment comes around, no interest is demandable. But the exception is equally well settled with the rule, that where the legatee is a child of the testator, and a minor, incapable of supporting himself, or one to whom the testator has placed himself in *loco parentis*, and no special provision is made for the maintenance of the legatee, interest will be allowed on the legacy, although not payable until a future time, as, upon the legatee's attaining full age. For the purpose, in such case, of maintaining the legatee, interest must be paid on the legacy, whether it be *particular* and *vested*, or *particular* and *contingent*, or whether it be *residuary* and *vested*, or *contingent :*" 4 *Rawle* 119. In Heath *v.* Perry, 3 *Atk.* 101, Lord HARDWICKE says, that " where the legacy is to a child, *let the testator give it how he will*, either *at* twenty-one, or *at* marriage, or *payable* at twenty-one, or *payable* at marriage, and the child has no other provision, the Court will give interest, by way of maintenance; for they will not presume the father *inofficious*, or so unnatural as to leave a child destitute." This doctrine is repeated with approbation in the opinion of this Court in Magoffin *v.* Patton, 4 *Rawle* 119; and the following cases are there cited as sustaining it to the fullest extent : Glyde *v.* Wright, 1 *Chan. Rep.* 265, 8vo. ed. ; Harvey *v.* Harvey, 2 *P. Wms.* 21 ; Green *v.* Belchier, 1 *Atk.* 505 ; Incledon *v.* Northcote, 3 *Atk.* 438 ; Hearle *v.* Greenbank, *Ib.* 716 ; Coleman *v.* Seymour, 1 *Ves.* 210 ; Beckford *v.* Tobin, 1 *Ves. Jr.* 300 ; Carey *v.* Askew, 2 *Bro. C. C.* 58. In Incledon *v.* Northcote, 3 *Atk.* 433–8, the legacy was given " to such child or children as should attain twenty-one, to be paid to such child, if but one ; if more than one, equally to be divided between them." Here the legacy was not only contingent, but the vesting of it depended upon a condition precedent. It was not like a legacy, vesting, in the first place, but to be divested upon a condition *subsequent.*

The children who died before twenty-one never took any interest whatever under the will. So that it is not material whether the vesting be prevented by a condition *precedent*, or the legacy be defeated by a condition *subsequent*. It seems now to be settled, without regard to this distinction, that whether the legacy be vested or contingent, the legatee may have an allowance out of the interest for his support and education: Philips v. Annesly, 2 *Atk.* 58; 1 *Bro. Ch. R.* 105. And this is decreed by the Court, not on the footing of any intention expressed in the will, but on the principle of the natural obligation of parents to support their children: Harvey v. Harvey, 2 *P. Wms.* 21; Cricket v. Dolby, 3 *Ves.* 10; Corbin v. Wilson, 2 *Atk.* 207. So, where a legacy has been given by a party who puts himself in *loco parentis*, the same doctrine holds as in the case of a legacy by a parent to a child: Acherly v. Vernon, 1 *P. Wms.* 753; Beckford v. Tobin, 1 *Ves. Sen.* 308; Hill v. Hill, 3 *Ves. & B.* 183; 2 *Roper* 199; Ritzer v. Haber, 14 *Ser. & R.* 237; Ellis v. Ellis, *Sch. & Lefr.* 1; Corbin v. Wilson, 2 *Atk.* 207.

It is certainly true, that the cases in which interest has been allowed to infants for maintenance, have not always been consistent with themselves, or with any established principle. Grandchildren have not always been regarded as having equal claims with children to this humane provision for their support, or to other equitable intervention founded on the same principle. In Kettle v. Townsend, 1 *Salk.* 187, where one devised a copyhold estate to his grandson, Lord Chancellor SOMMERS decreed the will good, and "that equity ought to supply a surrender, *as well as in the case of a son;* that a grandson was a son, and the grandfather was bound to provide for him." The House of Lords reversed this decree, and held that equity ought not to supply this defect, unless it were in favor of a son or a daughter, and not then neither, *if it was to disinherit the eldest son.*" But in Watts v. Bullas, 1 *P. Wms.* 60, in 1702, the Master of the Rolls said that "such a devise ought to be made good for *grandchildren* as well as *children;* and if the same case were to come *now* into the House of Lords, it would be so ruled, and that he had and would decree so." The like was also declared by Lord HARCOURT in Freestone v. Rant, *Trin.* 1712; and in Fursaker v. Robinson, 1717, *Pre. Cha.* 475, Lord COWPER doubted the authority of Kettle v. Townsend, in regard that the grandfather, by the Act of 43 Eliz., is bound to maintain his grandchild, which he said he believed was not taken notice of in that case: see Watts v. Bullas, 1 *P. Wms.* 60, note. In Chapman v. Gibson, 3 *Bro. C. C.* 229, Lord ALVANLEY said he did not see why a grandchild should not have the same equity, for the statute of Elizabeth has made it compulsory on the grandfather to provide for him. In Hills v. Downton, 5 *Ves.* 557, 565, Lord ROSSLYN expressed a strong opinion against the decision of the House of Lords. And in Perry v. Whitehead, 6 *Ves. Jr.* 546, in

[Seibert's Appeal.]

1801, Lord ELDON said, "the difficulty with me is this: can I, sitting here, contradict a decision of the House of Lords ?"

Fortunately for the consistent and humane administration of justice, the Courts of this country are no longer influenced by the feudal policy which favored the eldest son to the exclusion of other claims; and are not restrained, as Lord ELDON was, from contradicting a decision of the English House of Lords, if founded upon a principle which has no existence in this country, and the decision be opposed to reason and justice, and to the opinions of enlightened jurists, in that country as well as in this. It was well urged in the argument by Mansfield and Fonblanque for the plaintiffs, in Perry v. Whitehead, that "the ground that a grandfather is not bound to provide for his grandchild, as a father is for a child, and the former, therefore, is not under the same moral obligation, would sound extraordinary out of a Court of judicature, and certainly affords no reason. The statute of Elizabeth imposes the same obligations upon a grandfather and grandmother, as upon the parents; which is the sense of the legislature and of mankind:" 6 *Ves. Jr.* 546. In Pennsylvania, the grandfather, as well as the father, is required by the Act of 13th June, 1836, section 28, to relieve and maintain his grandchildren, when their necessities require it. This statute is in accordance with the moral sense of mankind. Those who suppose that infant grandchildren do not, upon the death of their parents, take the place of the latter in the affections of their grandfather, are strangers to the most ordinary manifestations of the best feelings of the human heart. As the mementoes of the departed child, they have peculiar claims to his regard; and their unprotected helplessness, produced by the common bereavement, in most cases rivets his affections to them closer than they ever clung to their parent. If there is anything in the argument in favor of awarding interest on a legacy to a child, resting upon the presumption that a parent did not intend that his children should starve, the presumption holds, with equal strength, where the parent is dead, and the grandchildren are in the will substituted to the legacy previously given to the parent for life. If a testator, by benevolent manifestations, may put himself in *loco parentis*, so as to entitle a stranger to maintenance, much slighter circumstances will bring the case of a grandchild within that rule. Indeed, this may always be presumed, where, as in the case under consideration, the legacy is given to the child only for life, and upon its death the grandchildren are substituted, under the express direction in the will, to receive the legacy, the income of which had been previously given to their parent.

In Cricket v. Dolby, 3 *Ves. Jr.* 10, the Master of the Rolls said that a grandchild was always considered the same as a child, within the view of the exception in respect to interest for maintenance. In Corbin v. Wilson, 2 *Atk.* 178, Newport v. Cook, 2 *Atk.* 332,

[Seibert's Appeal.]

and Norris *v.* Fisher, 2 *Atk.* 411, interest was decreed to grand-children for support and education, before the period for the payment of their legacies had arrived. In Acherly *v.* Wheeler and Vernon, 1 *P. Wms.* 783, and in Nichols *v.* Osborn, 2 *P. Wms.* 419, similar decrees were made in favor of the nieces of the testators.

Regarding the decree of the Orphans' Court as establishing the destitute condition of these children, and as fixing the proper allowance for them, we are of opinion that the interest upon the legacies, although they are contingent, is under the equitable control of the Common Pleas, for the purpose of maintaining the legatees, and that the decree of the said Court was well warranted by the evidence.

Decree affirmed.