## Hill, Appellant, v. Clark et al.

*Trust and trustees—Education of beneficiaries—Liberal education—Reimbursement of parent.*

A trust fund, created for the express purpose of educating the grandchildren of the testator, may be applied for that object, notwithstanding the liability of the parents and the fact that they may be able to support and educate their children out of their own means.

The views of a mother having the custody of her children in regard to their education are entitled to fair consideration by the trustees who have charge of a fund providing for such education. The trusteeship cannot be used as a means to coerce the children to live with one of their parents, nor will a court of equity permit the wishes and directions of a testator, with respect to the education of his grandchildren, to be nullified by the inaction of the trustees, or their failure to perform their duties under the trust.

Where the will of a testator created a trust fund, which was to be used in providing his grandchildren with a liberal education, from the time they were fifteen years old, it was the duty of the trustees to defray the expenses of the education of such grandchildren in the preparatory schools before they were ready to go to college, as well as to pay the expenses of their collegiate education. Where two of such grandchildren were living with their mother who had been divorced from their father, it was none the less the duty of the trustees to reimburse her for money expended by her in the preparatory education of such grandchildren. The mother in such cases was more than a mere volunteer; she was the legal custodian of the children, though not the parent primarily responsible for their maintenance and support. If the

trustees failed to perform the duty imposed upon them with reference to the education of her children, she was justified in seeing that the matter was attended to, and could look to the trustees for reimbursement of such reasonable sums as she spent for that purpose.

Argued November 17, 1919. Appeal, No. 116, Oct, T., 1919, by plaintiffs, from decree of C. P. Bradford County, Sept. T., 1917, No. 1, sitting in equity in the case of Jonathan A. Hill, George S. Hill and Marjorie Hill, by their next friend, Mabel Snow Hill, and Mabel Snow Hill, v. William W. Clark and George R. Hill, Trustee of Jonathan A. Hill, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Modified.

Bill in equity to compel trustees to provide for education of cestuis que trust. Before CHANNELL, P. J., of the 4th Judicial District specially presiding.

The facts are stated in the opinion of the Superior Court.

The court awarded the sum of $760.68 to Mabel Snow Hill to reimburse her for the expenditures for George S. Hill, covering the school year 1916-1917, and refused the balance of her claim. Plaintiff appealed.

*Errors assigned* were in overruling exceptions to findings of fact and conclusions of law and the decree of the court.

*Edwin P. Young,* and with him *J. W. Beaman* and *Watrous, Marsh & Critchton,* for appellants.

*J. R. Lilley,* and with him *William P. Wilson,* for appellees.

OPINION BY KELLER, J., February 28, 1920:

The matters involved in this appeal are (1) the construction of that portion of the will of General Jonathan

A. Hill, which creates a trust fund for the education of his grandchildren, and (2) whether there has been an abuse of discretion by the trustees in the management of that trust.

General Hill died October 24, 1905, leaving to survive him his widow, Lucy M. Hill, and five children, of whom the defendant George R. Hill is one. William W. Clark, the other defendant was his son-in-law.

By his will, General Hill gave the bulk of his estate to the two defendants, as trustees, to pay over the entire income of said estate to his widow, during her natural life and from and after her death in trust "to expend a sufficient portion or all of the income, and using the principal or corpus of my estate if necessary, for the liberal education of such of my grandchildren, children of my beloved daughters, Hattie M. Clark, Kathryn E. Gregg and Lulu M. Douglass, and children of my sons, George R. Hill and Jon. A. Hill, Jr., as in the judgment of my trustees are worthy of it, and would be benefited by it, giving the boys a collegiate education in the best colleges, and the girls a liberal education in the best seminaries, of the land; defraying the expenses of such education from the time they each arrive at fifteen years of age, or earlier if the father of such grandchild should die before he or she attains that age......My first and chief object after providing for the support of my wife being to give all my grandchildren worthy of it such an education as is hereinbefore specially mentioned, and which by adverse circumstances in early life I was deprived of, and have ever since felt the need of. I desire my said trustees while guarding against extravagance to be liberal in exercising the power conferred upon them for that purpose." He further provided that any and all income not used or expended as beforementioned or needed in the then near future, should be paid over annually, one-fifth thereof to each of his said five children during their natural lives, and after the death of any of them, to the children of such deceased child,

share and share alike, "it being my will and intention that the expenses incident to the education mentioned of the child or children of anyone of my said children shall be first deducted from the one-fifth of the income to be paid the parents of such child or children," and with remainder over to the grandchildren, at the death of their parents, in such proportions as his children might appoint by will; and providing that none of the income bequeathed the defendant George R. Hill should be liable for his debts, contracts, etc.

Lucy M. Hill, the testator's widow, died January 7, 1914.

The plaintiff, Mabel Snow Hill, was married to the defendant, George R. Hill, on September 2, 1891, and at the death of Lucy M. Hill, they had three children of an age or nearly an age to be benefited by the provisions of their grandfather's will: Jonathan A. Hill, born May 7, 1896; George S. Hill, born November 13, 1893, and Marjorie Hill, born April 15, 1901. On February 16, 1915, Mabel Snow Hill obtained a decree of divorce from bed and board, and was awarded the custody of her younger children. On May 16, 1917, this bill was filed to compel the trustees to carry out the provisions of General Hill's will relative to the education of said children and to pay to the plaintiff, Mabel Snow Hill, the moneys expended by her in the education of said children as directed in the will of their grandfather, by reason of the failure of the defendant trustees to carry out its provisions. An answer was filed denying liability for expenses in connection with the education of the two boys, because they had been sent to schools not chosen or approved by the trustees; and averring that Jonathan had reached his majority and did not desire further education; that they were willing and expected to provide for George's education at Mercersburg, Pa.; and that Marjorie was attending the high school at Towanda, which they deemed the proper place for her education until she would graduate therefrom,

at which time they expected to provide for her education at some proper seminary. By leave of court, Jonathan A. Hill was permitted to withdraw from the suit.

After a full hearing, a decree was entered that the trustees pay to Mrs. Hill the sum of $760.68, expended by her in the education of George S. Hill at Mercersburg Academy, during the school year of 1916-17; but she was denied repayment of moneys expended by her for his education at St. John's School, Manlius, N. Y., from January 7, 1914, to June, 1916, amounting to $800, and expenses in connection with Marjorie's education at the high school after she became fifteen years old, amounting to $178.70. The court below found as a fact, and it is admitted by the defendants, that both the children are worthy of the education provided for them by the will of their grandfather and that they would be benefited by such an education; and that the income in the hands of the trustees is ample for the purpose of educating all the grandchildren of the testator in the manner provided for in his will.

The will of General Hill did not provide that the income (and if necessary the principal) of the trust fund therein created should be expended by the trustees on the collegiate education of his grandchildren, as contended by the appellee's counsel in his argument before this court (citing Shepard v. Shepard, 17 Atl. 173, Conn.), but on their liberal education, which was to begin, so far as the trust was concerned, as soon after the death of the testator's widow, as they respectively attained the age of fifteen years, or earlier if the father of any grandchild should die before he or she attained that age. The collegiate and seminary education which was directed to be given was only the culmination of the liberal education provided for, and the preparatory education fitting the child for college or seminary was just as much a part of the liberal education intended to be furnished the child as the final collegiate training. This was recognized, after this suit

was brought, by the trustees themselves, for Mercersburg Academy, to which George S. Hill was sent by them in the fall of 1917-18, is only a preparatory school fitting for entrance to college.

Nor did the will direct the trustees to see that the testator's grandchildren should be given such liberal education if their parents failed to furnish it. The clear and explicit command to the trustees—the first thought in the testator's will after making provision for his wife,—was that they should expend a sufficient portion or all of the income (and so much of the principal or corpus as was necessary), on the liberal education of such of his grandchildren as were worthy of it. The interest of the testator's children in the income of the trust estate was limited to what was left after such sums as had been used or expended for that purpose, or as might be so needed in the near future, had been first deducted. It was the duty of the trustees immediately upon the death of General Hill's widow, to provide for the education of those of his grandchildren who came within the purview of his will, and not to pay any portion of the income of said estate to the testator's children, until they had performed that duty. The fact that George R. Hill's children were living with, and in the custody of, his divorced wife, did not relieve the trustees of the duty or responsibility towards them which they had assumed. Their education was not a matter of grace which the father could furnish or withhold, depending upon his feelings to his wife or the custody of his children; it was a matter of right which the trustees,—both of them,—were bound to see to, and which could not be defeated or frustrated by the individual prejudices or dislikes of either of them.

Instead of the trustees taking any steps to furnish to these children the education they were required by the terms of General Hill's will to provide, and expending the money necessary for that purpose, they absolutely disregarded the provisions of the trust. They

made no inquiry of the mother of the children, with whom they were living, as to what her plans were, or where the children were to be educated, and no suggestion of any sort relative to their education; they neither approved nor disapproved any school which the children were attending or proposed to attend, nor gave themselves any concern whatever about their education. All the funds directed to be used for this purpose were improperly paid over to George R. Hill, one of the trustees, for his individual benefit. At the time his grandmother died, George S. Hill was attending school at Manlius, N. Y., where he had been placed by his father in 1911. Judge Clark's objection to the school, referred to by the court below, was not made as a trustee, but by way of friendly advice while George R. Hill was paying the expenses out of his own funds and long before he (Clark) was called upon as a trustee to exercise his judgment in the matter, and there was no proof that even these objections were ever communicated to the plaintiff, Mabel Snow Hill. The letters of George R. Hill and his counsel to the principal of the school at Manlius, show that his refusal to pay for his son's bills there after 1912, was not due to any disapproval of or dissatisfaction with the school which he himself had selected, but because his wife had left him and sued him for a divorce and the son had gone with his mother. There is no evidence that prior to the filing of this bill the trustees discussed the children's education at all and agreed upon any course of action relative thereto. They certainly never communicated the results of such a conference to Mrs. Hill. Judge Clark simply left the whole matter to his cotrustee, George R. Hill, and the latter did nothing beyond attempting to use the provisions of the will as a club to force the children to leave their mother and live with him. The evidence fully justified the learned chancellor's twenty-first finding of fact: "The father of the children has undertaken more or less to employ the trust imposed in him as to the

education of his children, in an effort to coerce them into leaving their mother's home and to come and live with him; and we find that to have been the chief reason why he did not pay for the schooling of George S. Hill during the school year of 1916 and 1917."

As soon as the plaintiff learned in some way that her husband preferred Mercersburg Academy to the Manlius school, she sent her son George to Mercersburg, but the trustees paid nothing towards his education there during the school year 1916-17, though admitting their liability therefor in this proceeding and raising no objection to the decree entered for its payment.

Under the facts in evidence, we can see no distinction between the moneys expended for George's education at Manlius and at Mercersburg; nor between the expenses incurred in George's education at Mercersburg, and those in connection with Marjorie's education at Towanda. It is not alleged that the amount paid at Manlius, as found by the court below, was extravagant; or that the sums spent for Marjorie's instruction in vocal and instrumental music and languages while attending high school, were excessive or improper. They certainly formed a part of the liberal education which her grandfather had in mind and if not obtainable at the high school it was entirely proper to secure it for her from outside sources. It is a mistake to conclude that the trustees were liable for no expenses in connection with the children's education until they left home; they were liable for sums properly expended in that respect whether at home or away from home.

The plaintiff, Mrs. Hill, was not a mere volunteer; she was the legal custodian of these children, though not the parent primarily responsible for their maintenance and support. If the trustees failed to perform the duty imposed on them with reference to their education, she was justified in seeing that the matter was attended to and could look to the trustees for reimbursement of such reasonable sums as she expended in that behalf.

It was early decided in this State that courts of equity may direct the maintenance and education of an infant, and reimbursement for past expenditures in connection therewith, out of the income in the hands of trustees, where a legacy has been given for the benefit of the child by one who had put himself in loco parentis, as General Hill had with respect to his grandchildren's education: Corbin v. Wilson, 2 Ashm. 178, pp. 207-210; although the income be directed to be accumulated: Newport v. Cook, 2 Ashm. 332; and even the principal may under certain circumstances be used for that purpose: Ex parte Potts, 1 Ashm. 340, pp. 344-346. These cases from Ashmead's Reports, "decided by that very learned judge, President KING," have been cited with approval by the Supreme Court: Clark v. Wallace, 48 Pa. 80, p. 84; Seibert's App., 19 Pa. 49, p. 56; Harland's Accounts, 5 Rawle 323, p. 330; Pearson's Est., 251 Pa. 612.

There was no evidence in the case apart from the facts that Mrs. Hill was separated from her husband and supported herself in part by teaching music, as to whether her separate means were adequate to provide for the children's education. But that question does not arise here because, (1) she was not primarily responsible for their support and education, and (2) no payment to her is asked for out of the separate estates of her children. The rule now in force in England (Sherwood v. Smith, 6 Vesey 454; Sisson v. Shaw, 9 Vesey 285; Maberly v. Turton, 14 Vesey 499), and generally adopted in this country (In re Kane, 2 Barb. Ch. 375; Dawes v. Howard, 4 Mass. 97; Alling v. Alling, 27 Atl. 655, N. J. Eq.;—see also Seibert's App., 19 Pa. 49; Leiby's App., 49 Pa. 182; Kinike's Est., 29 W. N. C. 163, 9 Lanc. L. R. 30), that courts of equity will order a parent whose means are inadequate, to be reimbursed for sums spent in the support and education of his child out of the income of the latter's estate, having regard to the fortune of the child and the situation, ability and circumstances of the parent, is not applicable. The case is governed

190        HILL, Appellant, *v.* CLARK et al.

rather by another principle, that a trust fund created for the express purpose of educating a child may be applied for that object notwithstanding the liability of the parents and the fact that they may be able to support and educate the child out of their own means: Freeman v. Coit, 27 Hun 447; In re Friedlander, 178 N. Y. Supp. 50; Myers v. Myers, 2 McCord Chancery (S. C.) 214, 16 Am. Dec. 648; 29 Cyc. 1617. The sums here asked to be repaid to Mrs. Hill will not come from any separate estate belonging to her children nor consume any fund that would otherwise accumulate for their benefit, as was the case in Seitz's App., 87 Pa. 159, where reimbursement was denied a mother for past expenditures. Refusal to pay will, under the peculiar facts of this case, inure only to the pecuniary advantage of their father, the person primarily responsible for the expense of their education, in the absence of the trust created for that purpose, and one of the trustees, whose failure in duty necessitated the very expenditures here sought to be reimbursed. A court of equity will not under such circumstances permit the dereliction of a trustee to result in his own personal and private gain.

In our judgment, the evidence in this case reveals an abuse of discretion on the part of the trustees in that, prior to the bringing of this suit, they failed to exercise any discretion at all in the premises—a total want of action that might have resulted disastrously to these children had their mother not seen to it that their education was not neglected.

We do not mean to hold that the discretion of the trustees, honestly and reasonably exercised with respect to the education of these children, may be set aside by their mother, though her views in the matter are entitled to fair consideration at the hands of the trustees: Goodwin's Est., 107 N. Y. Supp. 784; but the trusteeship cannot be used as a means to coerce these children to live with their father, nor will a court of equity per-

181, (1920).]          Opinion of the Court.

mit the wishes and directions of the testator with respect to the education of his grandchildren to be nullified by the inaction of the trustees or their failure to perform their duties under the trust.

The court has already found as a fact that the moneys expended by Mrs. Hill in connection with George's education at Manlius, after January 7, 1914, amounted to $800, which is not excepted to, and her expenditures in connection with Marjorie's education in music and languages, etc., were admittedly $178.70. We are of opinion that the court below should have ordered the trustees to pay these sums amounting together to $978.70, with interest from June 1, 1917, to the plaintiff, Mabel Snow Hill, in addition to the amount decreed, $760.68, making a total of $1,739,38, with interest from June 1, 1917. We are not satisfied that the sums expended in connection with Marjorie's attendance at the Aloha Summer Camp, over and above the amount contributed by her father, can be held to be a part of the reasonable expenses of her liberal education. The first, second, fifth and sixth assignments of error are sustained to the extent indicated in this opinion. The offers of evidence referred to in the seventh and eighth assignments were relevant, in our opinion, as the girl's state of mind and her ability to progress in her studies under the conditions existing at home resulting from the troubles between her father and mother, should have been considered by the trustees in passing upon where it was best for her to attend school, and by the court on the question of the trustees' abuse of discretion. But as this is Marjorie's last year at high school and the trustees propose to pay her expenses at a seminary beginning this fall, it is not very material, especially as our disposition of the case will not require a retrial.

The record is remitted to the court below with directions to enter a decree in accordance with this opinion.

Costs to be paid by George R. Hill.